24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 6 2002

Michael N. Milby
Clerk of Court

UNITED STATES OF AMERICA          §
             Plaintiff,          §
                  §
    vs          §          CIV. NO. B-01-092
                  §
CERTAIN REAL PROPERTY KNOWN          §
AS 2808 HACKBERRY LANE          §
            Defendant.          §

## GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

RONALD G. MORGAN
Assistant U. S. Attorney
Federal Bar No. 23902
TX Bar No. 00795014
600 East Harrison, # 201
Brownsville, Texas 78520
Tel No.  (956) 548-2554
Fax No. (956) 548-2711

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

APPLICABLE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A. Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          1. Availability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          2. Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B. Innocent Owner Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A. The Defendant Property Is Subject To Forfeiture . . . . . . . . . . . . . . . . . . . . . . . . 13
          1. Mr. Valdez's Standing and Ownership of the Defendant Property . . . . . . . 13
          2. Unexplained Income as Basis for Presumption of Drug Proceeds . . . . . . . . 15

      B. Mrs. Valdez's Interest In The Defendant Property Is Subject To Forfeiture . . . . . 20
          1. Mrs. Valdez Is Not A Bona Fide Purchaser For Value . . . . . . . . . . . . . . . . 21
          2. Mrs. Valdez Was Aware of the Nature Of The Funds Used To Purchase
             the Defendant Property and Therefore Its Forfeitability . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

# TABLE OF AUTHORITIES

**PAGE**

## CASES:

United States v. Two Parcels in Russell County, 92 F.3d 1123 (11th Cir. 1996) . . . . . . . . . . . 11

Boze v. Branstetter, 912 F. 2d 801, 804 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Douglass v. United States Auto. Ass'n, 65 F. 3d 452, 459 (5th Cir. 1995),
   aff'd., 79 F. 3d 1415 (5th Cir. 1996) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Forsyth v. Barr, 19 F. 3d 1527, 1533 (5th Cir. 1994), cert. denied, 115 S. Ct. 194 (1994) . . . . . 11

Lee v. Lee, 112 Tex. 392, 247 S.W. 828 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Little v. Liquid Air Corp., 37 F. 3d 1069, 1075 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 10, 11

Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 2894 (1992) . . . . . . 23

Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F. 3d 89, 92 (5th Cir. 1995) . 10,
   11, 19

McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 70 F.3d 26 (5th Cir. 1995) . . . . . 10

One 1954 Douglas C-54 Aircraft, 604 F.2d 27 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Reid v. State Farm Mut. Auto Ins. Co., 784 F. 2d 577, 578 (5th Cir. 1986) . . . . . . . . . . . . . . . 10

Rushing v. Kansas City Southern Railway Co., 185 F.3d 496, 513 (5th Cir. 1999) . . . . . . . . . . 17

Smith v. United States, 76 F.3d 879 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Thomas v. Great Atlantic and Pacific Tea Co., Inc., 233 F.3d 326, 331 (5th Cir. 2000) . . . . . . . 17

Transamerica Ins. Co. v. Avenell, 66 F. 3d 715, 718-19 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . 11

United States v. $86,020.00 in U.S. Currency, 1 F. Supp. 2d 1034, 1040-41 (D. Ariz. 1997) . 11,
   19

**CASES:** (cont'd)

United States v. 500 Delaware Street, 113 F.3d 310 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Hooper, 229 F.3d 818 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Lewis, 759 F.2d 1316, 1330 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Martinez, 228 F.3d 587, 590  (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Moffitt, Zwerling & Kemler, 83 F.3d 660 (4th Cir. 1996) . . . . . . . . . . . . . . . . 26

United States v. One 18th Century Colombian Monstrance, 797 F.2d 1370 (5th Cir. 1986) . . . 14

United States v. One 1967 Chris-Craft 27 Foot Fiber Glass Boat, 423 F.2d 1293 (5th Cir. 1970)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. One 1988 Prevost Liberty Motor Home, 952 F.Supp. 1180, 1203-04
        (S.D. Texas 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Real Property at 40 Clark Road, 52 F. Supp. 2d 254 (D. Mass. 1999) . . . . 11, 19

United States v. Reissig, 186 F.3d 617, 619 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Salinas, 65 F.3d 551, 554 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Schinnell, 80 F.3d 1064, 1069 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Tilley, 18 F.3d 295, 300 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Two Parcels in Russell County, 92 F.3d 1123 (11th Cir. 1996) . . . . . . . . . . . . 19

United States v. West, 22 F.3d 586, 591 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

West v. United States, 513 U.S. 1020, 115 S.Ct. 584 (Mem), 130 L.Ed.2d 498, 63 USLW 3415,
        63 USLW 3420 (U.S., Nov 28, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATUTES, RULES, REGULATIONS:

11 U.S.C. §362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. §983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12-13, 21, 24, 25

18 U.S.C. §985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §801 et. seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §853(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

21 U.S.C. §881(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 U.S.C. §6103(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. 106-185, 114 Stat. 202 (2000)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rule 56 of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 17

Rule 902(3) of the Federal Rules of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 6 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| vs | § | CIV. NO. B-01-092 |
| | § | |
| CERTAIN REAL PROPERTY KNOWN | § | |
| AS 2808 HACKBERRY LANE | § | |
| Defendant. | § | |

## GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

The United States of America, through Michael T. Shelby, United States Attorney, and

Ronald G. Morgan, Assistant United States Attorney, pursuant to Federal Rules of Civil Procedure

(Fed. R. Civ. P.) 56, files this motion for summary judgment against the Defendant Property stating

as follows:

## STATEMENT OF THE ISSUES

Whether, pursuant to Federal Rules of Civil Procedure, the Government is Entitled to

Summary Judgment that the Defendant Property is forfeitable to the United States.

## SUMMARY OF THE ARGUMENT

Defendant Property was purchased with proceeds from the illegal sale of drugs and is

therefore forfeitable to the United States Government. For that reason, Mr. Valdez's interest, if any,

is subject to forfeiture to the United States. At the same time, Mrs. Valdez does not qualify as an

innocent owner because she is not a bona fide purchaser for value and was otherwise aware of the

forfeitable nature of the Defendant Property as property purchased with illegal proceeds. Therefore,

Mrs. Valdez's interest in the Defendant Property, as is her spouse's, is subject to forfeiture to the

United States.

# FACTS

The complaint in this case seeks forfeiture of a residence and the land upon which it sits located at 2808 Hackberry, BROWNSVILLE, CAMERON COUNTY, TEXAS. The legal description of the property is recorded as:

> 1.82 acres of land out of Block 49, of the El Jardin Subdivision, Tract 33, in Share 19, of the Espiritu Santo grant, and all improvements thereto located in Cameron County, Texas

(hereinafter "Defendant Property").

The forfeiture action in this case is brought pursuant to 18 U.S.C. §§ 983 and 985 to enforce the provisions of 21 U.S.C. § 881(a)(6), which provide for the forfeiture of property which is purchased/improved with narcotic trafficking proceeds in violation of Title II of the Controlled Substance Act, 21 U.S.C. § 801 et seq. The facts underlying this action are established by, among other things, Mr. Valdez's conviction for conspiracy to possess and distribute cocaine, as set forth in his plea colloquy, and the Claimants' federal tax returns, which demonstrate a clear absence of legitimate source funds to purchase the lot at 2808 Hackberry and to build the residence on that lot.

The facts of this case reveal that the claimants are Bernardino and Irma Valdez ("hereafter "Claimants"). Mrs. Valdez claims to be a citizen of the United States, but that her husband is a legal resident. GA at A10 and 33.[1] The Defendant Property is comprised of the land and residence located at 2808 Hackberry, Brownsville, Texas. The land records relating to the Defendant Property reveal that the lot upon which the residence at 2808 Hackberry is built was purchased by Claimants

---

[1]"GA ____" refers to the page in the Government's Appendix, which is submitted simultaneously with this motion. Government Exhibit A is the condensed transcript of Mrs. Valdez's deposition, which occurred on December 11 and 12, 2001. In an effort to minimize the volume of the Government's Appendix, only the referenced pages from the condensed transcript are attached.

in January 1998. GA at B001. At the time of that purchase, a lien was placed upon the property to secure payment of the $55,000.00 loan obtained by Claimants to pay for the land. GA B005. On February 9, 1999, that lien was released, indicating that the purchase loan had been paid off by Claimants. GA B011. The building permit for construction of the residence was obtained in July 1998. GA "D."

According to building permits issued by the City of Brownsville, Mr. Valdez acted as the general contractor on the construction of the Hackberry residence. GA "D." Mrs. Valdez also played an active role in the construction of the residence, ordering building items, accepting delivery of those items, paying contractors, and ordering construction of the swimming pool located on the property. GA A 175-76; G075, G 152; G015 and "KKK;" and G015, respectively. Furthermore, Mrs. Valdez handled the family banking, paying the bills and making the deposits into the family bank accounts. GA A025 and 220-21.

Between July and December, 1998, in addition to largely paying off the loan on the lot, the Claimants also spent in excess of $110,000 on construction of the Hackberry residence. From the receipts obtained during discovery, the Claimants spent more than $52,000 at El Clavo Lumber, alone. GA G 096-171. Additionally, Claimants spent more than $8,000 for brick, GA G091-094; $4,500 for plumbing, GA G172-174; more than $9,000 for electrical, GA G022-038; almost $2,000 for tile, GA G046; more than $4,700 at Cameron Ashley for additional building products, GA G050; more than $7,500 for doors, GA G072-088; more than $6,000 for a sprinkler system, GA G089-090; more than $3,500 for counter tops, GA G175-182; and $17,000 for a swimming pool, GA G015-021.

3

During 1998, Claimants reported to the Internal Revenue Service[2] ("IRS") total wages, salaries and tips, line seven of the form 1040, of $42,783. GA C074. In 1997, they had reported a total income of **negative** $5,603. GA C059.[3] In 1999, These amounts were relatively consistent with Claimants' income reported to the IRS for the years 1993 through 1996. In 1993, Claimants reported total income was $9,674, GA C023; in 1994, reported total income was $14,244, GA C033; in 1995, reported total income was **negative** $ 27,227, apparently due to depreciation and costs occurred in a business, GA C043; and in 1996, total income was reported as **negative** $19,689, due to depreciation and business costs, GA C052. In 1999, Claimants' reported income decreased to $35,300, GA C084, and in 2000, the reported income was $19,683. GA C089. These amounts contain no depreciation or loss from a schedule C business.

During the period relevant to this forfeiture action, Claimants' deposits into their personal bank account stand in stark contrast to their claimed income. Between January 1997 and December 1997, Claimants, more specifically Mrs. Valdez , who stated that she handled all of the family banking, GA A025 and 220-21, deposited almost $86,000 into their personal checking account. GA F069-108.[4] During 1998, more than $210,000 was deposited into Claimants' personal checking account. GA F111-142, F163. Of this amount, approximately $61,000 was a deposit made after the Claimants had obtained a cash out equity loan from their previous residence. GA F126, GA A99.

---

[2]On July 30, 2001, District Court Judge Charles Sifton, Eastern District of New York, issued an order pursuant to 26 U.S.C. § 6103(i), permitting the use of tax returns and tax payer information for the subject years for Bernardino and Irma Valdez. Out of an abundance of caution, however, those records are contained in the Government Appendix in a sealed envelope to insure minimal dissemination of the tax information and returns.

[3]This negative amount, appears to be the result of depreciation and writeoffs from the operation of a trucking business operated by Mr. Valdez. GA C061.

[4]In totaling the deposits, items such as overdraft protection deposits and credits from returned checks have not been added.

4

Thus, even without the home equity loan, Claimants deposited more than $165,000 into their personal checking account during a year in which their claimed income was $42,783. Of this amount, more than $90,000 of the deposits were made in cash. GA "K" through "U." In addition to their deposits into personal checking account, Claimants also deposited almost $24,000 into a separate account that was established in the name of one of the Claimants' daughters, with Mrs. Valdez as the fiduciary . GA E009-014.

In 1999, the Claimants deposited more than $70,000 into their personal checking account, GA F144-168, and almost $11,000 into the fiduciary account for one of Claimants' daughters. GA E014-018. Of these deposits, almost $29,000 were made in cash. GA "V" through "QQ." Thus, Claimants' bank records reflect that during a year in which they claimed $35,300 in total wages, GA C084, they deposited more than $80,000 into bank accounts.

A similar imbalance is found when Claimants' deposits for 2000 are examined. According to Claimants' tax returns, their total income was $19,683. GA C089. During 2000, Claimants deposited into their personal checking account more than $101,000. GA F169-202. Among these deposits were almost $26,000 in cash deposits. GA "RR" through "III."

In July 1999, Juan Rodriguez, one of Mr. Valdez's co-conspirators, was indicted in the Eastern District of New York for conspiring to and possessing with the intent to distribute cocaine. GA "H." In August 1999, a sealed complaint in support of an arrest warrant was issued alleging that Mr. Valdez had violated the controlled substances laws of the United States by conspiring to possess and transport cocaine from the Rio Grand Valley to the Eastern District of New York. GA "I." In September 1999, Mr. Valdez transferred his interest in the Defendant Property to Mrs. Valdez. GA B013.

Mr. Valdez was ultimately arrested re-entering the United States from Mexico in January 2001. GA A023 and 226 . In February, 2001, a federal grand jury, sitting in the Eastern District of New York, indicted Mr. Valdez for conspiracy to distribute and possession with the intent to distribute cocaine and marihuana. GA "J." The period alleged was between January 1996 and November 1997. Id. In April 2001, Mr. Valdez entered a guilty plea to a superceding criminal information. GA "III." In that information, Mr. Valdez plead guilty to conspiring to possess and distribute cocaine on three separate occasions, concluding in the fall of 1996. GA "QQQ"005-30. Mr. Valdez has not yet been sentenced for that crime.

This conviction is not the first instance of Mr. Valdez contravening the controlled substances laws. In July 1993, Mr. Valdez, pursuant to his plea, was convicted in Cameron County district court of possessing more than 50, but less than 200, pounds of marihuana. GA "JJJ." On that occasion, Mr. Valdez, pursuant to a plea agreement, was sentenced to confinement for ten years, which was suspended for a period of ten years and placed on probation. That probation was subsequently terminated early, upon the petition of Mr. Valdez. GA "KKK."

Following Mr. Valdez's guilty plea and after examining the pertinent documentation relating to the income and spending of Mr. and Mrs. Valdez, the Government filed the instant in rem civil action seeking forfeiture of the Defendant property as property acquired with proceeds of drug trafficking. Mr. Valdez was served with a copy of the complaint on June 11, 2001 and Mrs. Valdez on June 6, 2001. GA "LLL" and "MMM."

On June 21, 2001, the Valdezes' filed for bankruptcy protection pursuant to Chapter 13 of the United States Bankruptcy Code. GA "NNN." Listed among the assets of the Valdezes was the Defendant Property. Because of the bankruptcy filing, an issue arose as to whether the Defendant

6

Property was protected by the automatic stay provisions of 11 U.S.C. §362. On September 27, 2001, after several months of litigation regarding this issue, the bankruptcy court lifted the automatic stay insofar as it applied to the Defendant Property. GA "OOO.".

On December 11th and 12th of 2001, Mrs. Valdez was deposed regarding the finances of the Valdez family and the source of funds for purchase and construction of the Defendant property. In her deposition, Mrs. Valdez confirmed the accuracy of the bank statements, and the cash deposit slips. GA A074-75 and 160-61. In response to inquiries regarding the Valdez tax returns, Mrs. Valdez stated that they generally were accurate. GA A062. According to Mrs. Valdez, the single exception related to the Valdez 1993 tax return. GA A30-35. For that period, Mrs. Valdez stated that there was also some unreported income which her husband made in Mexico. Mrs. Valdez further stated that the family's monthly expenses typically amounted to about $2,500 per month or $30,000 per year. GA A166-70.

According to their 1993 return, the total income for the Valdezes was $9,674. GA C023. Despite this fact, Mrs. Valdez testified that the Valdezes built two houses during the period 1991 through 1993. GA A137-39. According to Mrs. Valdez, around 1983 she and her husband purchased land in Rio Bravo and began constructing a house on that property. GA A120. That construction was completed in 1993. GA A125. Mrs. Valdez asserted that the house in Rio Bravo was sold in 1998 for $100,000. GA A125.

In 1991, the Valdezes also purchased a lot in Brownsville in the El Lago subdivision. GA A135. Construction of the home on that lot was also completed in 1993. GA A138-39. That house was the subject of a "cash out" home equity loan during the processing of which it was appraised at approximately $75,000. GA A151. In both cases, it appears that the construction was under the

7

direction of Mr. Valdez. There is no evidence that construction of either house was financed. GA A149. Initially, Mrs. Valdez said that there were no loans obtained to finance the construction of either house, GA A149, but then added that they would obtain loans from family and friends. Id.

When asked how such undertakings could be paid for on the salary reported to the IRS, Mrs. Valdez replied that Mr. Valdez also had an import business, the income from which was not reported to the IRS. GA A141-146. When asked whether the import business had anything to do with Mr. Valdez's 1993 conviction for possessing more than 50 pounds of marihuana, Mrs. Valdez replied that it did not. GA A142. Instead, according to Mrs. Valdez, her husband imported metal.[5] GA A141.

Mrs. Valdez alleged that the money from the sale of the house in Rio Bravo, Mexico, was used to pay for the purchase and construction of the Defendant Property. GA A048-49. In support of this sale, Mrs. Valdez produced a document that purports to be a sales agreement for that sale. GA "PPP." When questioned about the document, Mrs. Valdez admitted that some of the information was in fact not true. GA A129-32. Upon examination, Mrs. Valdez admitted that the statements in the document that state that she is a citizen of Mexico, that she is a resident of Rio Bravo and that she in fact resides at the address given in Rio Bravo are not true. Id. Mrs. Valdez stated that she had never lived in the house, had not resided in Rio Bravo and, in fact was a United States citizen and had resided here and been a citizen of the United States for almost 22 years. GA A131-32 and GA A10. Moreover, Mrs. Valdez stated that her husband had never lived in the house. GA A123.

---

[5]Because the "business" was not reported to the IRS, no records have been discovered relating to such a "business." Furthermore, there is no record of such amounts being brought into the United States by or on behalf of the Claimants.

When asked how the payment for the house had been transferred to the United States, Mrs. Valdez said that it was in cash and carried across the Mexican-United States border in various amounts and that the cash had not been declared at the time of entry. GA A125 and 132. Mrs. Valdez made several other assertions regarding extra-national sources of cash that were deposited into their personal bank accounts, but provided no evidence substantiating the existence of those sources.[6] GA A212-14 and 216-17.

During her deposition, Mrs. Valdez admitted that, even if her assertion regarding the sale of the house in Rio Bravo supplied an additional source of funds for construction of the Defendant property, that amount, plus what was reported to the IRS as the Valdezes' income, is still far short of the amount of money deposited and expended by the Valdezes during the period 1998 through 2000. GA A201, 210, 218-19 and 220.

## APPLICABLE LAW

### A. Summary Judgment Standard

#### 1. Availability

Before addressing the substantive nature of summary judgment under the Federal Rules of Civil Procedure, it is necessary to appreciate that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)(internal quotation marks omitted). This integral vehicle for resolving legal actions is properly utilized "upon a proper showing of the

---

[6]For example, towards the end of the deposition, Mrs. Valdez stated that her husband had an aunt living in Mexico who was a retired teacher and who regularly sent Mr. Valdez two thousand dollars in cash.

9

lack of a genuine, triable issue of material fact." Id. Thus, summary judgment is both proper and appropriate when supported by the facts and the applicable law. It is the summary judgment standard that guides the determination as to whether the facts and law dictate a summary disposition in any particular case.

### 2. **Standard**

In general, when deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. Boze v. Branstetter, 912 F. 2d 801, 804 (5th Cir. 1990) (citing Reid v. State Farm Mut. Auto Ins. Co., 784 F. 2d 577, 578 [5th Cir. 1986]). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F. 3d 89, 92 (5th Cir. 1995)(emphasis added), revised on other grounds upon denial of reh'g, 70 F. 3d 26 (5th Cir. 1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the non-movant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary

10

judgment proof that there is an issue of material fact so as to warrant a trial. <u>Transamerica Ins. Co.</u> <u>v. Avenell</u>, 66 F. 3d 715, 718-19 (5th Cir. 1995); <u>Forsyth v. Barr</u>, 19 F. 3d 1527, 1533 (5th Cir. 1994), <u>cert.</u> <u>denied</u>, 115 S. Ct. 194 (1994). The non-movant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubts as to the facts, or a scintilla of evidence. <u>Douglass v. United States Auto. Ass'n</u>, 65 F. 3d 452, 459 (5th Cir. 1995), <u>aff'd.</u>, 79 F. 3d 1415 (5th Cir. 1996) (en banc); <u>Little</u>, 37 F. 3d at 1075.

These same standards are applied where summary judgment is sought in an asset forfeiture action. <u>United States v. Two Parcels in Russell County</u>, 92 F.3d 1123 (11th Cir. 1996) (the mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment); <u>United States v. $86,020.00 in U.S. Currency</u>, 1 F. Supp. 2d 1034, 1040-41 (D. Ariz. 1997) (court may enter summary judgment for the Government even if the claimant offers evidence of a legitimate source for seized currency, if the explanation is so implausible that no reasonable jury could find for the claimant); <u>United States v. Real Property at 40 Clark Road</u>, 52 F. Supp. 2d 254 (D. Mass. 1999) (same) (claimant must offer something more than evidence of some legitimate income to create material issue of fact). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. <u>McCallum Highlands</u>, 66 F. 3d at 92; <u>Little</u>, 37 F. 3d at 1075 (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 [1990]).

Finally, Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. <u>Little</u>, 37 F. 3d at 1075 (citing <u>Celotex</u>, 477 U.S. at 322). In this case, to avoid forfeiture of their

11

interests in the Defendant Property, the Claimants must establish a legitimate source for the money used to purchase the Defendant Property. In the alternative, for Mrs. Valdez to avoid forfeiture of her interests in the Defendant Property, she must establish that she was a bona fide purchaser for value and that she was unaware and had no reason to know that the Defendant Property was otherwise subject to forfeiture.

## B. **Innocent Owner Standard**

Effective August 23, 2000, as part of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. 106-185, 114 Stat. 202 (2000), Congress established a uniform innocent owner defense.[7] That defense, which is codified at 18 U.S.C. § 983(d), provides that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. §983(d)(1). The statute defines what constitutes an innocent owner and distinguishes between the interests of purported innocent owners whose interests were acquired before, 983(d)(2), and those acquired after, 983(d)(3), the offense which gives rise to the forfeiture.

Pursuant to 18 U.S.C. § 983(d)(2) a pre-illegal act transferee innocent owner is a person who did not know of the conduct giving rise to the forfeiture or who, upon learning of the conduct giving rise to forfeiture, did all that was reasonably possible to terminate such use of the property. As for those individuals claiming to have acquired an interest in the property to be forfeited after the act giving rise to forfeiture has occurred, the standard is different.

---

[7]CAFRA applies to "any forfeiture proceeding commenced on or after" August 23, 2000. The legislative history of CAFRA indicates that a forfeiture proceeding is commenced, for purposes of the act, on "the date upon which the first administrative notice of forfeiture relating to the property is sent." In the instant case, because administrative forfeiture is not permitted for real property, 18 U.S.C. § 985, and no such notice was filed, the forfeiture action is commenced upon filing the civil complaint.

12

Pursuant to 18 U.S.C. §983(d)(3), a post-illegal act transferee innocent owner claimant must establish that, at the time the interest in the property is acquired, he or she was a bona fide purchaser or seller for value and that the claimant was reasonably without cause to believe that the property was subject to forfeiture. In those situations where the property to be forfeited is a primary residence, the statute provides a qualified exception to the requirement that the purported innocent owner must be a bona fide purchaser or seller. 18 U.S.C. §983(d)(3)(B). As relevant between spouses, the bona fide purchaser requirement has been deleted, but only in those cases where the property is not traceable to proceeds of any criminal offense. 18 U.S.C. §983(d)(3)(B)(iii). In other words, where the property was purchased with or improvements were made using proceeds traceable to or derived from a criminal act, the purported innocent owner spouse can prevail as such only if he/she qualifies as an innocent owner under §983(d)(3)(A), which requires that the spouse be a bona fide purchaser for value without cause to know of the forfeitability of the property.

## ARGUMENT

### A.    The Defendant Property Is Subject To Forfeiture

#### 1.   Mr. Valdez's Standing and Ownership of the Defendant Property

Mr. Valdez's transparent attempt to thwart the forfeiture provisions of the Controlled Substances Act does not prevent the Court from forfeiting any interest that Mr. Valdez may have in the Defendant Property. Mr. Valdez's attempt to avoid forfeiture by ostensibly transferring his interests in the Defendant Property after the indictment of his co-conspirator, is of little effect factually or legally.

As a factual matter, the true nature of the transfer of interests is obvious in that while Mr. Valdez executed the documents necessary to effect an otherwise legal transfer of the Defendant

13

Property, his filing a claim for that same property highlights the truth of the matter, which is that Mr. Valdez still claims an interest in the Defendant Property. Furthermore, prior to his arrest and after "transferring" the property to Mrs. Valdez, Mr. Valdez continued to live in the house and apparently exercised dominion and control over the property. GA A024. Thus, despite Mr. Valdez's attempt to avoid forfeiture by "transferring" his interest in the Defendant Property, the threshold questions before the Court are whether Mr. Valdez has standing to contest the forfeiture and whether this Court has jurisdiction to forfeit Mr. Valdez's interest in the property, notwithstanding the absence of Mr. Valdez's name on the title to the Defendant Property. The short answer to both questions is obvious and affirmative.

The ownership interest necessary to convey standing may be defined as "having a possessory interest in the res, with its attendant characteristics of dominion and control," One 1954 Douglas C-54 Aircraft, 604 F.2d 27 (8th Cir. 1979)(titular owner of airplane lacked standing when another had purchased the aircraft and in fact controlled its use); or a financial stake in the item. United States v. One 1988 Prevost Liberty Motor Home, 952 F.Supp. 1180, 1203-04 (S.D. Texas 1996). Ownership may be proven by actual possession, dominion, control, title and financial stake. 1988 Prevost Motor Home, 952 F. Supp. at 1203. Where the proof indicates that the claimant is not an owner, as that term is employed in the statute, the claimant does not have a sufficient interest in the defendant property to contest its forfeiture. United States v. One 18th Century Colombian Monstrance, 797 F.2d 1370 (5th Cir. 1986); United States v. One 1967 Chris-Craft 27 Foot Fiber Glass Boat, 423 F.2d 1293 (5th Cir. 1970). On the other hand, just because a claimant's name does not appear on the title documents, does not mean that, at least for purposes of standing and forfeiture,

14

the claimant is not an owner of the property.  1988 Prevost Motor Home, 952 F. Supp. at 1203 (search for owner extends beyond formal title to determine the identity of the true owner).

Thus, the law of this circuit and all others that have considered the issue is that despite Mr. Valdez's attempt to avoid forfeiture by "transferring" his interest in the Defendant Property, Mr. Valdez, by filing a claim in this matter asserts that he has a legally cognizable interest in the Defendant Property and, for forfeiture purposes, remains an owner of the property.  As an owner of the Defendant Property, Mr. Valdez has standing to challenge the forfeiture, which in turn renders his interest, whatever it may be, subject to forfeiture in these proceedings, just as if the "transfer" had never occurred.  United States v. 500 Delaware Street, 113 F.3d 310 (2d Cir. 1997)(son's transfer of building to father for nominal amount after son's arrest for growing marihuana did not prevent court from forfeiting the building to the United States).

## 2. **Unexplained Income as Basis for Presumption of Drug Proceeds**

Title 21, United States Code, Section 853(d) provides a rebuttable presumption that unexplained income acquired or expended during or reasonably after the period for which a Defendant was convicted of a controlled substance offense is subject to forfeiture as proceeds of the controlled substance offense.  This presumption dictates the result regarding Mr. Valdez's interests in the Defendant Property.

As the above facts indicate, between 1997 and 2000 the Valdezes' reported income never exceeded $43,000.  In fact, during 1997, the Valdezes' reported income was a negative amount and their average reported income for the period 1997 through 2000 was approximately $23,000 per year.  Despite these facts, during the same period the Valdezes deposited over $300,000 into their personal bank accounts.  Of this amount, approximately $145,000 were deposits of cash.  Where the tax

returns show minimal income, while the other records indicate substantial expenditures, the returns are highly probative in characterizing the source of funds,. See United States v. Lewis, 759 F.2d 1316, 1330 (8th Cir. 1985)(in prosecution for continuing criminal enterprise, "income tax returns are relevant to show legitimate sources of income in light of large unexplained assets"). Clearly these amounts and the cash nature of the deposits support, beyond any credible argument, that there was a great deal of "unexplained" income over an extended period of time. Moreover, because there is no intervening legitimate source of income to explain the money deposited and spent by the Valdezes, the unexplained income should be considered as having been acquired as a result of those illegal activities.

Mrs. Valdez, who managed the banking activities for the Valdez family, initially attempted to explain the sources of this unexplained income by pointing to various extra-national sources. Ultimately, however, Mrs. Valdez conceded that there was a continuing amount of money in the Valdez personal accounts for which there was no explanation. GA A201, for 1998; GA A218-19 for 1999; and, GA A220 for 2000.

The only support, in any fashion substantiating her claims that the unexplained income was legitimately obtained from extra-national sources, was a single document relating to the house purportedly built by the Valdezes in Rio Bravo, Mexico. This document however, by Mrs. Valdez's own admission, contains falsehoods and inaccuracies about which Mrs. Valdez must have been aware at the time the document was executed. Given the significance of this document to Claimants' allegations, there can be no question, but that there is a motive to fabricate such evidence. This motivation, plus the admissions made by Mrs. Valdez, may serve as a basis for the Court's resolution as to whether there was a Mexico house or, more importantly, whether the sale of such a house

16

provided legitimate funds to build the Defendant Property.  <u>See</u> <u>Thomas v. Great Atlantic and Pacific</u>

<u>Tea Co., Inc.</u>, 233 F.3d 326, 331 (5th Cir. 2000)("when the circumstances are conducive to lying,

well-supported suspicion of mendacity may serve as a legitimate basis for the fact finder's

reasonable inferences concerning the ultimate facts at issue").

Furthermore, the document contains none of the indicia required to support its authenticity

or admissibility.   <u>See</u> Federal Rule of Evidence 902(3) (generally requiring a certificate of

genuineness as predicate for admissibility of such documents or determination by Court that good

cause exists for treating the purported document as authentic).   Because the agreement fails, on its

face, to comply with the rules regarding admissibility of such documents, the Government maintains

that it is an insufficient basis upon which to find a genuine issue of material fact.  <u>See</u>, <u>Rushing v.</u>

<u>Kansas City Southern Railway Co.</u>, 185 F.3d 496, 513 (5th Cir. 1999)("significant probative

evidence" must be submitted by the nonmoving party to create a genuine issue of material fact).

The effect of the absence of these indicia of authenticity is compounded by the fact that the

document fails to comply with the dictates of Federal Rule of Civil Procedure 56(e), governing the

form and such of affidavits submitted to refute a summary judgment motion.[8]   Given the fact that

mere unsupported allegations or claims are insufficient to defeat a properly plead and supported

summary judgment motion, Rule 56(c) requires that affidavits be made only on personal knowledge,

shall set forth such facts as would be admissible in evidence and shall affirmatively show that the

affiant is competent to testify to the matters stated therein.   Moreover, any papers or documents

---

[8]While not strictly an "affidavit," the Mexico document was obviously presented to suffice as testimony
regarding the alleged sale of the house.  As such, the Government maintains that, to be properly considered by the
Court, the document must comply with the provisions of Rule 56.

submitted in support of the affidavit must be sworn or certified, a requirement not met by the document proffered by Claimants in support of their claim that the Defendant Property was purchased with funds from the sale of the Mexico house. In fact, none of these requirements for admissibility or authenticity are met by the purported sales agreement for the house in Rio Bravo, Mexico, which renders the document inadmissible and an insufficient basis upon which to find a genuine material issue of fact.

This conclusion is premised upon the fact that in order to find a genuine issue of material fact "there must be <u>evidence</u> on which the jury could reasonably find for the" claimant. Because the requirement exists for "evidence" to be presented to raise the material issue of fact, the Government maintains that such evidence, by its nature as evidence, must be both admissible and probative. <u>See</u> <u>Rushing</u>, at 513 (emphasis added).

Finally, even if the document is accepted as true and genuine, all that it reveals is that the Valdezes may have sold a house. What the document does not reflect is whether the Mexico house was itself purchased with or built using the proceeds of drug transactions, which in turn would make the proceeds of the sale of the house proceeds of a drug transaction and forfeitable. <u>Cf.</u>, <u>United States v. West</u>, 22 F.3d 586, 591 (5th Cir. 1994) (holding that transactions underlying bankruptcy fraud produced "proceeds of unlawful activity" despite intervening act), cert. denied, 513 U.S. 1020 (1994).

That the Mexico house was constructed using drug proceeds is supported by the fact that during at least part of the period in which this house was constructed, there is no evidence of legitimate source income to support the construction of both the Mexico house and the second residence in Brownsville. In fact, just the contrary appears more plausible, given the reported

income of the Valdezes during at least part of the salient period. The only evidence indicating a possible source for the money used to construct the two residences is Mr. Valdez's possession of more than 50, but less than 200 pounds of marihuana. This last fact, given his subsequent and continuing involvement with controlled substances makes illegal commerce a much more likely explanation for the funds used to purchase several homes than any legitimate income reported to the Internal Revenue Service.

Mrs. Valdez's unsupported claims for additional sources of income, outside that reported to the IRS, remain simply that, unsupported claims. These assertions are nothing more than unsubstantiated allegations of legitimate sources, which courts have repeatedly rejected as a basis for a material issue of fact supporting a denial of a motion for summary judgment. See, e.g., United States v. Two Parcels in Russell County, 92 F.3d 1123 (11th Cir. 1996); United States v. $86,020.00 in U.S. Currency, 1 F. Supp. 2d at 1040-41; United States v. Real Property at 40 Clark Road, 52 F. Supp. 2d 254 (D. Mass. 1999). Mrs. Valdez's deposition testimony made it clear that with each increasing shortcoming in reported income relative to identified deposits and expenditures, she "remembered" an apparent new source, because she "need[ed] to know where the money came from." GA A217.

The Government submits that it exactly this type of "remembering" that the Courts have precluded as a basis for creating a genuine issue of material fact. Absent such a position, the nonmoving party can create baseless factual issues, thereby thwarting the legitimate exercise of the authority and entry of summary judgment power of the Court. McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F. at 92 (requiring evidence, not just allegations or assertions, of contradictory facts).

19

Thus, as Mrs. Valdez made clear during her deposition, there are numerous incidents over a period of years in which the deposits into and withdrawals from the Valdez personal bank accounts vastly exceeded their reported income and for which there is no legitimate explanation. As the Claimant who handled the family banking, if anyone were to know where the money came from and was spent, surely Mrs. Valdez would have known. Thus, it is indisputable that there is unexplained income, apparently not reported to the IRS because there was no legitimate explanation for the income. Combining this unexplained income with Mr. Valdez's repeated convictions for drug offenses clearly invokes the statutory presumption established by Title 21, U.S.C. §853(d). No credible evidence has been offered to rebut the presumption, for which reason there can be no genuine issue of material fact as to whether the Defendant property was purchased with drug proceeds. Clearly, the evidence, by at least a preponderance if not more, establishes that the Defendant Property was purchased with proceeds of drug activity, for which reason it is subject to forfeiture to the United States.

The only remaining issue is whether Mrs. Valdez, as a spouse who, unlike her husband, appears to not have been actively involved in the drug trafficking, qualifies as an innocent owner, thereby retaining at least her interest in the Defendant Property. For the reasons set forth below, Mrs. Valdez does not qualify as an innocent owner and any interest that she may have had in the Defendant Property is also subject to forfeiture.

**B.    Mrs. Valdez's Interest In The Defendant Property Is Subject To Forfeiture**

As made plain above, there is no genuine issue of material fact as to whether the Defendant Property was purchased with proceeds from transactions relating to controlled substances, the facts overwhelmingly support that unrebutted conclusion. Instead, the question vis-a-vis Mrs. Valdez is

whether she is an innocent owner. The Government maintains that Mrs. Valdez is neither innocent, nor, because of the relation back doctrine and the nature of the funds used to purchase the Defendant Property, an owner of the Defendant Property.

In order to claim status as an innocent owner for property which is acquired after the criminal act which renders it forfeitable, the claimant must be a bona fide purchaser for value who did not know and was reasonably without cause to believe that the property was subject to forfeiture. As the language of the section 983(d)(3)(A) expressly provides through its use of the conjunctive "and," both attributes must be present before an individual can claim the status of innocent owner and thereby avoid total forfeiture. Under the facts of this case, Mrs. Valdez can satisfy neither criterion.

1.     **Mrs. Valdez Is Not A Bona Fide Purchaser For Value**

In order to qualify as a bona fide purchaser for value, the claimant must give something of value in exchange for the property acquired and the interest claimed. H.R. Rep. 105-358, 105th Cong., 1st Sess., 1997 WL 677201 (1997). Common sense dictates that in order for the item to be of value or properly transferred in exchange for the property, the transferor must have a cognizable interest in that which is given in exchange for the property. As explained below, because the funds used to purchase the Defendant Property were proceeds of criminal activity, they never became community property, which means that Mrs. Valdez never gave anything of value for the property.

First, as examined above, the money used to purchase and build the Defendant Property are presumed to be proceeds of drug trafficking. This fact defeats any claim of Mrs. Valdez to the Defendant Property, at least to the extent such funds were used to build the Defendant Property. The reason for this is that to the extent Mrs. Valdez's "contribution" to the purchase of the property and construction of the residence is derived from drug trafficking, i.e. the unexplained income discussed

21

above, she never had title to those funds and hence never provided anything of value in exchange for the property.  United States v. Salinas, 65 F.3d 551, 554 (6th Cir. 1995)("one never acquires a property right to [illegal] proceeds").

Second, even assuming that Mrs. Valdez intends to claim that her one-half interest in the Defendant Property is attributable to community property, so that by law she is presumed to own one-half of the property without contributing directly to its purchase, she still had nothing nor could she give anything of value in exchange for the property.  This fact follows from the law's insistence that one never obtains title to ill-gotten gains.  Smith v. United States, 76 F.3d 879 (7th Cir. 1996). In other words, Mrs. Valdez was entitled to one-half of nothing, because the property, as purchased by her husband, was purchased with drug trafficking proceeds, which precludes title to the proceeds, or anything derived from those proceeds, from ever vesting in her husband.

The United States Court of Appeals for the Fifth Circuit has considered what is owned by one who possesses criminal proceeds and uses those proceeds to purchase property.  Where the Government forfeits criminal proceeds or items acquired with such proceeds, the court has determined that the individual from whom the property was forfeited lost nothing to which he or she was otherwise entitled.  In such situations:

> "the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme."  We find nothing which renders this reasoning inapplicable to the forfeiture of property purchased with proceeds admittedly obtained through [some other type of criminal activity].

United States v. Schinnell, 80 F.3d 1064, 1069 (5th Cir. 1996)(quoting United States v. Tilley, 18 F.3d 295, 300 (5th Cir. 1994)).  Therefore, in the case of criminal proceeds or property acquired with such proceeds, the criminal has "nothing to which the law ever entitled him."  Tilley, 18 F.3d at 300.

22

It then follows that the criminal has "no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their genesis in illegal activity." Id. (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 2894 [1992]).

Most recently, the Fifth Circuit further explained this result by pointing out that where the property was acquired using proceeds from criminal activities, the "'relation back doctrine' operates to vest title in the Government to the [illegal] proceeds . . . as of the time [that Mr. Valdez] engaged in those illegal activities, [therefore] these proceeds, and any property purchased with the proceeds, never became community property." United States v. Martinez, 228 F.3d 587, 590 (5th Cir. 2000). Accord, United States v. Hooper, 229 F.3d 818 (9th Cir. 2000).

Thus, it is clear that Mr. Valdez, despite his possession of the proceeds of the drug transactions, never held title or ownership to the proceeds and, in fact, had no legally recognized interest in the proceeds. From this it is becomes obvious that if Mr. Valdez, from whom Mrs. Valdez derived her interest in the proceeds used to purchase the property, had no legal interest in the criminal proceeds, then neither did Mrs. Valdez. See Lee v. Lee, 112 Tex. 392, 247 S.W. 828 (1923)(as to community property wife obtains "no higher or better title" than does husband).

Thus, to the extent Mrs. Valdez contributed directly to the purchase of the Defendant Property, that contribution was with unexplained income, which is presumed to be drug proceeds. To the extent Mrs. Valdez claims an interest in the Defendant Property as community property, because the Defendant Property was purchased by Mr. Valdez with drug trafficking proceeds, Mr. Valdez never had title to the proceeds nor to the Defendant Property. From this it follows that Mr. Valdez could pass no legal interest in the Defendant Property to Mrs. Valdez. The absence of any

23

legal interest in the proceeds that were exchanged for Defendant Property and Mrs. Valdez's failure

to exchange something of value for the Defendant Property prevents Mrs. Valdez from qualifying

as a bona fide purchaser of value under the statute.[9]

As clearly demonstrated earlier, unsupported claims are not and cannot be accepted by Courts

to create material issues out of mere allegations in an effort to avoid summary judgment. Mrs.

Valdez's assertions that the Defendant Property was purchased with funds from the unsubstantiated

sale of a house in Mexico or from funds received from cousins or aunts in Mexico similarly are

without support. Thus, the only basis upon which to find that Mrs. Valdez purchased the Defendant

Property with other than drug proceeds acquired by her husband are the bare unsupported allegations

of Mrs. Valdez, which, as a matter of law are insufficient to defeat summary judgment. The result

of the foregoing is that, because of the nature of the funds used to purchase the Defendant Property,

Mrs. Valdez transferred nothing of value in exchange for the Defendant Property and, hence, does

not qualify as a <u>bona fide</u> purchaser.

### 2. Mrs. Valdez Was Aware of the Nature Of The Funds Used To Purchase the Defendant Property and Therefore Its Forfeitability

Even assuming, solely for purposes of argument, that Mrs. Valdez could somehow qualify

as a <u>bona fide</u> purchaser for value, she still cannot qualify as an innocent owner in this case. This

fact is the result of her knowledge as to the source of the funds used to purchase the property. Based

upon the facts set forth in the exhibits and Mrs. Valdez's deposition, she was aware, or reasonably

---

[9]Because the Defendant Property was purchased using **proceeds** from criminal activity, the exception to the bona fide purchaser requirement provided by 18 U.S.C. § 983(d)(3)(B) does not apply.

should have been aware, of both the nature of the unexplained income and its expenditure, which precludes her innocent ownership claim.

First, as set forth above, to be an innocent owner under the forfeiture statute, Mrs. Valdez must either have been unaware of the illegal conduct giving rise to the forfeiture, in this case the drug trafficking, or if previously unaware, upon learning of it must have taken all reasonable steps to bring an end to the illegal conduct. 18 U.S.C. § 983(d)(2)(A). In this case Mrs. Valdez did neither.

During the relevant period, Mrs. Valdez was typically listed as either an owner or officer of one of the various trucking companies involving she and her husband. Such a position must, by common sense and practicality, defeat any allegation of Mrs. Valdez that she was not or should not have been aware of the "unexplained income" that was being spent given the profitability of the trucking companies.[10] Moreover, given Mrs. Valdez's signing of the tax returns, which clearly indicated insufficient income to deposit and expend the amounts in question, as well as the fact that Mrs. Valdez admitted to knowingly failing to report income on at least one occasion, GA A142, it strains credulity for Mrs. Valdez to claim either that she was innocent or was unaware of the unexplained income.

In those instances, between 1993 and 2000, when Mrs. Valdez failed to list her occupation on her tax returns or listed it as homemaker or simply "HW," it appears that Mrs. Valdez, made no financial contribution to the family. This fact, however, does not excuse Mrs. Valdez from

---

[10]The companies, Valdez and Daughters and, later, Valdez Transport, never paid taxes and never reported taxable income. In fact, according to their tax returns, the only year in which one of the Valdez trucking companies showed any taxable income was 1997, during which it reported a net profit of $7,122. GA C061. After that year, for tax purposes the income was consistently and increasingly negative for the years 1998 and 1999. GA C102, GA C114, respectively.

25

observing the obvious.  As she stated during her deposition, Mrs. Valdez handled the family banking, making the deposits and writing the checks.  In that capacity, she must have repeatedly become aware of the discrepancy between what was reported as income and what was being deposited and spent.  Moreover, the large amount of cash repeatedly deposited into the Valdezes' personal bank accounts by Mrs. Valdez should have made this fact obvious.  Despite these warnings, Mrs. Valdez continued to do nothing.  This failure to acknowledge and take note of the obvious does not exist by itself.

Mrs. Valdez stated that she was aware of unreported income and, despite this fact, apparently felt no compulsion about signing the tax return under the penalty of perjury.  Thus, Mrs. Valdez, given her spouses's criminal history and the unexplained income, must have been aware of the nature of the business in which her husband was engaged and the source of the income which she so freely spent. Cf. United States v. Moffitt, Zwerling & Kemler, 83 F.3d 660 (4th Cir. 1996)(law firm had reason to know that fee it received was subject to forfeiture where it was aware of activities of client).  See also  United States v. Reissig, 186 F.3d 617, 619 (5th Cir. 1999) (knowledge can be inferred if individual deliberately blinded himself/herself to the existence of a fact). For these reasons, the Government maintains that Mrs. Valdez is not an innocent owner and does not qualify for such treatment under section 983.   If she does not qualify for such status, which she does not, then the Defendant Property is forfeitable to the United States.

The "innocent owner" defense against forfeiture of property is intended to protect those individuals who are actually innocent of wrongdoing, played no role in any of the illegal conduct giving rise to the forfeiture, and, in fact, were unaware of the wrong doing. Mrs. Valdez can claim none of these attributes, for which reason she is not entitled to claim the status of an innocent owner.

26

Because she is not an innocent owner and because the property was purchased with proceeds from transactions involving controlled substances, the property is subject to forfeiture and should be ordered forfeit to the United States.

## **CONCLUSION**

Based upon the facts in this case and the applicable law and because there is no reasonable dispute as to any material fact, the United States is entitled to summary judgment and would respectfully request the Court to rule accordingly.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

By:

RONALD G. MORGAN
Assistant U. S. Attorney
Federal Bar No. 23902
TX Bar No. 00795014
600 East Harrison, # 201
Brownsville, Texas 78520
Tel No.  (956) 548-2554
Fax No. (956) 548-2711

## CERTIFICATE OF SERVICE

I hereby certify that a on the ___16th___ day of ___January___, 2002, a true and

correct copy of the foregoing GOVERNMENT'S MOTION SUMMARY JUDGMENT,

GOVERNMENT APPENDIX, and the proposed Order of Forfeiture was sent, by prior arrangement

with Claimants' counsel, to Claimants' counsel on behalf of himself and the Claimants at the

addresses indicated:

Joe Valle
Attorney for Claimants
Attorney at Law
1120 East Tenth Street
Brownsville, Texas 78520

RONALD G. MORGAN
Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA §<br>Plaintiff, §<br>§<br>vs §<br>§<br>CERTAIN REAL PROPERTY KNOWN §<br>AS 2808 HACKBERRY LANE §<br>Defendant. § | CIV. NO. B-01-092 |

## ORDER OF FORFEITURE

The Plaintiff, the United States of America, has moved for entry of summary judgment. The Plaintiff has shown: that there are no reasonable dispute as to a material fact in this case. Based upon the pleadings and submitted documents, a preponderance of the evidence establishes that the Defendant Property is subject to forfeiture. Based upon the facts presented, the Court **GRANTS** Plaintiff's motion, and it is hereby **ORDERED**:

1.   That a judgment is entered against the Defendant Property described as a residence and the land upon which it sits located at 2808 Hackberry, BROWNSVILLE, CAMERON COUNTY, TEXAS. The legal description of the property is recorded as:

> 1.82 acres of land out of Block 49, of the El Jardin Subdivision, Tract 33, in Share 19, of the Espiritu Santo grant, and all improvements thereto located in Cameron County, Texas

(hereinafter "Defendant Property").

2.   Based upon the evidence submitted, there is no genuine issue as to any material fact that the Defendant Property was purchased using the proceeds from drug trafficking, which renders the Defendant Property subject to forfeiture;

3.     Based upon the evidence submitted, Mrs. Valdez is not an innocent owner of the Defendant Property;

4.     That Claimants Bernardino Valdez and Irma Valdez are divested of any right to or title in the Defendant Property;

5.     That the Defendant Property generally described as a residence and the land upon which it sits located at 2808 Hackberry, BROWNSVILLE, CAMERON COUNTY, TEXAS.  The legal description of the property is recorded as:

> 1.82 acres of land out of Block 49, of the El Jardin Subdivision, Tract 33, in Share 19, of the Espiritu Santo grant, and all improvements thereto located in Cameron County, Texas

Is forfeited to the United States of America, and;

6.     That the United States Marshals Service shall dispose of the Defendant Property in accordance with law and that the proceeds from the sale or disposition of the Defendant Property, if any, shall be disbursed in the following priority:

(a)   To reimburse USMS for its reasonable administrative costs in exercising jurisdiction over, preserving, maintaining or marketing the Defendant Property;

(b)   To pay all reasonable commissions and costs of sale;

(c)   To pay other Allowed Claims pertaining to the Defendant Property, and interest, if any, in a sequence and priority to be determined by the Court at a later date, if necessary;

(d)   All remaining proceeds shall be disbursed by USMS in accordance with law.

7.     That reasonable cause, as that term is set forth in 28 U.S.C. § 2465, existed to initiate the forfeiture action against the Defendant Property.

**THIS IS THE FINAL ORDER OF FORFEITURE.**

Signed this the _____ day of _____, 2002.

_____
UNITED STATES DISTRICT JUDGE

2