26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
ENTERED

**MAR 0 7 2002**

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| vs | § | CIV. NO. B-01-092 |
| | § | |
| CERTAIN REAL PROPERTY KNOWN | § | |
| AS 2808 HACKBERRY LANE | § | |
| Defendant. | § | |

## AGREED ORDER OF FORFEITURE

The United States of America, through Michael T. Shelby, United States Attorney, and

Bernardino and Irma Valdez (hereafter "Claimants"), through their counsel, Joe Valle,  hereby

enter into an agreed settlement of this action under and in accordance with the terms set forth

below relating to the forfeiture of certain real property known as 2808 Hackberry Lane,

Brownsville,  located in Cameron County, Texas, more particularly described as follows:

> 1.82 acres of land out of Block 49, of the El Jardin Subdivision, Tract 33, in Share
> 19, of the Espiritu Santo grant, and all improvements thereto located in Cameron
> County, Texas

(hereinafter "Defendant Property").

The terms of the settlement are as follows:

1.    Claimants agree and stipulate that the Defendant Property is forfeitable to the United

States, pursuant to the provisions of 21 U.S.C. § 881(a)(6), as property acquired with the

proceeds of transactions involving controlled substances.

2.    As a result of that forfeitablility, Claimants, or someone acting on behalf of

Claimants or as Claimants' representative ("Claimants' representative"), agree to sell, using

commercially reasonable procedures and under commercially reasonable terms, the Defendant

Property to a buyer acceptable to the United States Attorney, or his representative, at a price approved by the United States Attorney, or his representative.

3. The aforementioned sale, to include closing upon the sale and registering the deeds of the sale, is to be completed within a period of six months from the entry of the agreed order of forfeiture entered in this case. The parties agree that the lis pendens currently in place with respect to the Defendant Property will be lifted at the request of the United States only after execution of a contract to purchase the Defendant Property by a purchaser and at a purchase price approved by a representative of the United States Attorney as set forth in paragraph 2.

4. The parties agree that the reasonable costs associated with the sale of the Defendant Property by Claimants or Claimants' representative, as set forth in paragraph 2 above, shall be paid from the proceeds of the sale of Defendant Property.

5. Proceeds of the sale of Defendant Property, as set forth above under paragraph 2, shall be expended and distributed as follows in descending priority:

      a. Any costs, excepting attorney fees and court costs, incurred by the United States associated with the seizing, preserving and maintaining the Defendant Property;

      b. All costs of publication and notice incurred by the United States during the course of seeking forfeiture of the Defendant Property;

      c. All reasonable costs of selling the Defendant property;

      d. Fifty Thousand Dollars ($50,000.00) from the sale of the Defendant Property shall be distributed to claimants.

      E. The remaining proceeds from the sale of the Defendant Property shall be

distributed to the United States, by certified check or bank check made payable to
the United States Marshals Service and by delivering that check to the United
States Marshals Service, at 600 East Harrison, RM1032, Brownsville, Texas
78520.

6.     In the event Claimants, or Claimants' representative, fail to complete the sale within
the period set forth in this agreement or under the terms set forth in this agreement, Claimants, or
Claimants' representative, stipulate and agree that the Defendant Property is forfeit to the United
States effective midnight six months from the date the agreed order of forfeiture is entered by the
court in this case.

7.     In the event, the Defendant Property is forfeited to the United States pursuant
to paragraph six above, Claimants shall remove themselves and all of their belongings and
personal property from the premises of Defendant Property immediately upon forfeiture of the
Defendant Property to the United States and in no case no later than two weeks from the effective
date of the forfeiture under paragraph 6.  To the extent Claimants, or individuals under control of
or in the employment of Claimants, damage the Defendant Property beyond normal wear and
tear, Claimants agree to reimburse the United States for all reasonable costs of repair.

8.     As further consideration in support of this settlement, each party agrees to dismissal
of this case with prejudice as to both parties.

9.     Each party is to bear its own attorney fees and costs incurred during the course of any
and all actions relating to the Defendant Property, to include, but not limited to, the bankruptcy
proceeding in which the Defendant Property was listed as an asset by the Claimants.

10.    The parties agree that the United States Marshals Service shall dispose of the

3

proceeds of the sale of the Defendant Property in accordance with the terms of this Agreed Order of Forfeiture and the law.

11. This Agreed Order of Forfeiture constitutes a complete and final settlement between the parties and resolves all claims and issues relating to the Government's forfeiture of the Defendant Property. As such, Claimants release and forever discharge the United States, its employees, representatives and agents, including the United States Drug Enforcement Administration, the U.S. Attorney's Office and the U.S. Department of Justice, from all claims and causes of action arising out of or relating to the prosecution or settlement of this action; however, this paragraph shall not act as a release or discharge of the obligations and duties imposed on the United States by this Settlement Agreement. Similarly, except as provided by this agreement, the United States releases Claimants from all liability relating to the Defendant Property.

12. Further, as part of the agreed settlement in this case, Claimants stipulate that reasonable cause, as that term is set forth in 28 U.S.C. § 2465, existed to commence forfeiture action against the Defendant Property and that claimants agree to the entry of a certificate of reasonable cause as provided by 28 U.S.C. § 2465.

13. By their signatures below, the attorneys for each party expressly represent that they have consulted with their respective parties and have the authority of the party that they represent to enter into and bind those parties to the terms of this agreement.

4

The foregoing Agreed Order of Forfeiture is approved as to form and substance as indicated by the signatures of the counsel for each party:

Dated: _3/1/02_

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

By: _____

RONALD G. MORGAN
Assistant U.S. Attorney
Fed Bar No. 23902
TX Bar No. 00795014
600 East Harrison Street, #201
Brownsville, Texas 78521
Tel. (956)548-2554
Fax (956) 584-2711

BERNARDINO VALDEZ
IRMA VALDEZ, CLAIMANTS

By: _____

JOE VALLE
Counsel for Claimants
Fed Bar No.11422
TX Bar No. 20435450
1120 East Tenth Street
Brownsville, Texas 78520
Tel. (956) 546-2829
Fax. (956) 542-4080

Approved: _Irma Valdez_

The Court, having reviewed the foregoing, orders the entry of this Agreed Order of Forfeiture as the Final Order of Forfeiture and directs that this case be dismissed with prejudice as to both parties and further orders that each party is to bear its own costs and attorney fees.

**ORDERED** and SIGNED this _5th_ day of _March_, 2002, at Brownsville, Texas.

_____
UNITED STATES DISTRICT JUDGE

# DURABLE GENERAL POWER OF ATTORNEY

**STATE OF TEXAS** §
§ **KNOW ALL MEN BY THESE PRESENTS**
**COUNTY OF CAMERON** §

That I, BERNARDINO RUIZ VALDEZ, of Cameron County, Texas, do hereby make, constitute, and appoint IRMA VALDEZ, of Cameron County, Texas, my true and lawful Attorney-in-Fact, with full power to do any and every act and exercise any and every power that I might or could do or exercise through any other person and that my Attorney-in-Fact, in such Attorney-in-Fact's discretion, shall deem proper and advisable, intending hereby to vest in my Attorney-in-Fact a full and universal power of attorney, and not by way of limitation but as illustration, with full power to: :

(1)   accept as a gift or as security for a loan or reject, demand, buy, lease, receive, or otherwise acquire an interest in real property or a right incident to real property;

(2)   sell, exchange, convey with or without covenants, quitclaim, release, surrender, mortgage, encumber, partition, consent to partitioning, subdivide, apply for zoning, rezoning, or other governmental permits, plat or consent to platting, develop, grant options concerning, lease or sublet, or otherwise dispose of an estate or interest in real property or a right incident to real property;

(3)   make, acknowledge, execute, and deliver oil, gas, mineral or other natural resource leases of any real property, alone, or in conjunction with any other person or entity, under such conditions deemed proper; and make agreements and exercise every power incident to exploration, production or marketing of oil, gas, minerals, and other natural resources;

(4)   release, assign, satisfy, and enforce by litigation, action, or otherwise a mortgage, deed of trust, encumbrance, lien, or other claim to real property that exists or is claimed to exist;

(5)   do any act of management or of conservation with respect to an interest in real property, or a right incident to real property, owned or claimed to be owned by the principal, including power to:

(A)   insure against a casualty, liability, or loss;

(B)   obtain or regain possession or protect the interest or right by litigation, action, or otherwise;

(C)   pay, compromise, or contest taxes or assessments or apply for and receive refunds in connection with them;

(D)     purchase supplies, hire assistance or labor, or make repairs or alterations in the real property; and

(E)     manage and supervise an interest in real property, including the mineral estate, by, for example, entering into a lease for oil, gas, and mineral purposes, making contracts for development of the mineral estate, or making pooling and unitization agreements;

(6)     use, develop, alter, replace, remove, erect, or install structures or other improvements on real property in which the principal has or claims to have an estate, interest, or right;

(7)     participate in a reorganization with respect to real property or a legal entity that owns an interest in or right incident to real property, receive and hold shares of stock or obligations received in a plan or reorganization, and act with respect to the shares or obligations, including:

(A)     selling or otherwise disposing of the shares or obligations;

(B)     exercising or selling an option, conversion, or similar right with respect to the shares or obligations; and

(C)     voting the shares or obligations in person or by proxy;

(8)     change the form of title of an interest in or right incident to real property; and

(9)     dedicate easements or other real property in which the principal has or claims to have an interest to public use, with or without consideration.

(10)     sell and enter into contracts for the sale of all or any part of my personal property, tangible or intangible, wherever situated with full power to deliver possession of said personal property and execute in my name any documents necessary to transfer title to said personal property, including bills of sale or other documents of title, taking any security interest for any unpaid balance deemed proper;

(11)     lease, purchase, acquire, and take possession of any personal property, tangible or intangible, or any interest therein, on such terms and conditions deemed proper;

(12)     sell, buy, contract to sell, or contract to buy, for cash or other consideration, on such terms and conditions deemed desirable, to or from such persons or entities as deemed advisable, and do any acts necessary or proper to transfer, assign, convey, or vote (including, but not limited to, calling of meetings of directors or shareholders or making and giving consents and ratifications), by proxy

or otherwise, all my right, title, and interest in all or part of my stocks, bonds, commodity futures, futures, options, commodity contracts, puts, calls or other securities of any kind, wherever located and whether owned by me or standing in my name on the books of any company or brokerage firm;

(13)   deposit in my account with any bank, broker, trust company, or financial institution any check, monies, bills of exchange, drafts, promissory notes, and other securities for money payable or belonging to me; sign my name and endorse the same for deposit or collection; from time to time withdraw any monies deposited in my account and draw checks or drafts in my name; open bank accounts in my name; and pay any debts or expenses incurred by me or incurred on my behalf by my Attorney-in-Fact pursuant to the authority given by me;

(14)   borrow money from such sources and on such terms deemed fit and proper, upon the security of any of my property, either real, personal, or otherwise, and execute, sign, acknowledge, and deliver in such form as may be required or requested any promissory note, mortgage, security agreement or any other instrument that may be required to give to the lender the right to resort to my property as security for repayment of any such loan;

(15)   loan my money with or without interest to such sources and on such terms deemed fit and proper, with or without taking security either real, personal, or otherwise, and receive any promissory note, mortgage, security agreement or any other instrument that may be deemed fit to secure the loan if any security is required;

(16)   enter any safety deposit box in my name in any bank and withdraw and take therefrom anything contained therein; open new safe deposit boxes and close out any safe deposit boxes;

(17)   deal with any insurance company or agency with regard to any existing policy, pay premiums, make policy renewals, and purchase additional insurance of any type coverage;

(18)   collect, sue on, compromise, settle, discharge, release, arbitrate, prosecute, or fail to prosecute any claim, debt, lien, or right of action held by me or against me;

(19)   deal with any government administrative agency, federal, state, county, city, local, or otherwise, with regard to any matter in which I may have an interest, including but not limited to, any tax matter or controversy and any matter concerning the payment of benefits such as Social Security or Medicare;

(20)   contract with, employ, compensate, and dismiss any agent, clerk, servant, attorney, accountant, investment advisor, or other person or contract for, or terminate any service of any kind, as deemed proper, and determine whether or

not to act upon the advice of any such agent;

(21)   continue, manage, actively transact, and pursue any business in which I may have an interest; incorporate, liquidate, or in any manner change the form of carrying on any business;

(22)   prepare, sign, and file all tax returns and pay all taxes required by law by any jurisdiction; file claims for abatement and refund; request extensions of time; exercise any elections; act in my behalf in all tax matters of all kinds and for all periods before all persons representing the Internal Revenue Service or any taxing authority; file petitions to the tax court or any other court regarding tax matters; and sign and/or agree to any tax related document or procedure, including, but not limited to, receipts, offers, waivers, consents, powers of attorney, closing agreements, receipt of confidential information and the posting of bonds;

(23)   expend income or principal of my estate for the health, education, maintenance, and support of myself and my dependents;

(24)   purchase for me United States of America Treasury Bonds of the kind which are redeemable at par in payment of federal estate taxes and to arrange for the safekeeping and custody of any such treasury bonds;

(25)   convey any and all assets of my estate (consisting of any real, personal, or mixed property, of whatever kind, wheresoever located and whensoever acquired) into such trust or trusts as my agent shall deem proper, irrespective of whether said trust is now in existence or hereinafter established.  My agent shall be empowered to create and transfer assets to a revocable management trust for my benefit which will revert to my estate at my death on such terms as my agent shall deem to be in my best interest;

(26)   convey or release any contingent or expectant interests in property, any rights of survivorship incident to a joint tenancy, tenancy by the entirety, joint bank accounts, or trust bank account, and marital property rights;

(27)   exercise the right to revoke a revocable trust or surrender the right to revoke a revocable trust of which I am not a beneficiary;

(28)   elect payment options and ownership designation on any insurance policy, annuity, individual retirement account, pension plan or other retirement benefit, whether such designation was originally made by me or not, borrow money on any insurance policy, surrender any life insurance policy for its cash value, assigning any life insurance policy, and pledge any life insurance policy for a loan;

(29)   disclaim within the meaning of Section 37A of the Texas Probate Code, Section 112.010 of the Texas Trust Code, and Section 2518 of the Internal Revenue Code, any interest passing to me by testate or intestate succession, inter

vivos transfer or otherwise;

If any third party (including, but without limitation stock transfer agents, title insurance companies, banks, credit unions, and savings and loan associations) with whom my agent seeks to transact refuses to recognize my agent's authority to act on my behalf pursuant to this power of attorney, I authorize my agent to sue and recover from such third party all resulting damages, costs, expenses and attorney's fees that are incurred because of such failure to act.  The costs, expenses and attorney's fees incurred in bringing such action shall be charged against my general assets, to the extent that they are not recovered from said third party.

FURTHER, I state with regard to this Durable General Power of Attorney as follows:

(1)     I authorize my Attorney-in-Fact to execute on my behalf any documents necessary or convenient in the performance of any act;

(2)     I agree to hold harmless any person who may act in reliance upon the authority granted to my Attorney-in-Fact hereby;

(3)     my Attorney-in-Fact shall not be personally liable for  any act done under the authority of this Durable General Power of Attorney except for acts constituting gross misconduct or fraud;

(4)     self-dealing by my Attorney-in-Fact is permitted, and my Attorney-in-Fact may buy or sell, either directly or indirectly, any of my property from or to my Attorney-in-Fact, an affiliate, a relative, employer, partner, or business associate;

(5)     with regard to any life insurance policy on the life of my Attorney-in-Fact, the Attorney-in-Fact shall not exercise any incident of ownership within the meaning of Internal Revenue Code, Section  2042;

(6)     my Attorney-in-Fact shall be reimbursed for expenses advanced upon my behalf but for services rendered shall not be entitled to compensation;

(7)     this Durable General Power of Attorney shall not terminate on disability or incapacity  of the principal, BERNARDINO RUIZ VALDEZ;

(8)     this Durable General Power of Attorney shall continue in full force and effect until revoked by an instrument in writing, executed and acknowledged by the undersigned, or until actual notice of revocation is received by any third party relying on this Power of Attorney;

(9)     I authorize the Attorney-in-Fact or agent to indemnify and hold harmless any third party who accepts and acts under the power of attorney;

This Power of Attorney shall take effect immediately and is not affected by my subsequent disability or incapacity, and shall remain in effect and may be relied upon fully unless hereafter revoked by an instrument signed by me. It shall be filed for record in Cameron County, Texas, and any subsequent revocation shall also be filed for record in said County.

IN WITNESS WHEREOF, I have hereunto set my hand on this the 7TH day of February, 2001.


_____
BERNARDINO RUIZ VALDEZ


**STATE OF TEXAS** §
§
**COUNTY OF CAMERON** §

Before me, the undersigned authority, on this day personally appeared BERNARDINO RUIZ VALDEZ, who states that he is executing this General Power of Attorney for the purposes and consideration therein expressed.

Acknowledged before me by BERNARDINO RUIZ VALDEZ on this 7TH day of ___ February, 2001.

GREGORIO PADILLA
NOTARY PUBLIC
State of Texas
Comm. Exp. 06-12-2004

_____
Notary Public, State of Texas

## CERTIFICATE OF SERVICE

I hereby certify on this the ___3rd___ day of ___MARch___, 2002, a true and correct copy

of the above **AGREED ORDER OF FORFEITURE** was sent by first class mail to the individual

listed below at the indicated address:

Joe Valle
Attorney at Law
Attorney for Claimants Bernardino and Irma Valdez
1120 East Tenth Street
Brownsville, Texas 78520

RONALD G. MORGAN
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify on this the _____1st_____ day of _____March_____, 2002, a true and correct copy

of the above **AGREED ORDER OF FORFEITURE** was sent by first class mail to the individual

listed below at the indicated address:

Joe Valle
Attorney at Law
Attorney for Claimants Bernardino and Irma Valdez
1120 East Tenth Street
Brownsville, Texas 78520

RONALD G. MORGAN
Assistant U.S. Attorney